UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SARADA LEBOURGEOIS et al.**                          **CIVIL ACTION**

**VERSUS**                                              **No. 09-3054**

**ALLIED HOME MORTGAGE CAPITAL**                        **SECTION I/1**
**CORPORATION et al.**

## ORDER AND REASONS

Before the Court is a motion to remand, filed on behalf of plaintiff, Sarada LeBourgeois ("LeBourgeois").[1] Defendant, Allied Home Mortgage Capital Corporation ("Allied"), has filed on opposition memorandum.[2] LeBourgeois has filed a reply memorandum.[3] For the following reasons, LeBourgeois's motion is **GRANTED**.

### *BACKGROUND*

On March 11, 2008, LeBourgeois, with co-plaintiffs Bell Title Corporation ("BTC") and Chad Ham ("Ham"), filed a petition for damages (the "original petition") in Civil District Court for the Parish of Orleans.[4] The original petition named as defendants Allied, Terri-Lynn Killett ("Killett"), and Shane Smith ("Smith").[5] LeBourgeois, BTC, and Ham alleged that Allied,

---

[1] R. Doc. No. 7; R. Doc. No. 7-3, mem. supp.

[2] R. Doc. No. 12, mem. opp'n.

[3] R. Doc. No. 19-3, reply. The Court notes that the pages of LeBourgeois's reply memorandum do not bear sequential page numbers, in violation of Local Rule 10.1E.

[4] R. Doc. No. 1-2, petition.

[5] Plaintiffs alleged that Allied was a foreign corporation and that Killett and Smith were Louisiana citizens. Id. ¶I.

1

represented by Smith, a branch manager, and Killett, a loan officer, "did not pay off loans and negligently misrepresented certain information about various loans conducted on behalf of Plaintiffs."[6] They further alleged that Allied, through Smith and Killett, misappropriated funds and slandered plaintiffs.[7] At the time the original petition was filed, all plaintiffs were represented by D. Patrick Daniel, Jr. ("Daniel").

According to the state court pleadings, on or about October 9, 2008, LeBourgeois substituted new counsel, Jason L. Melancon ("Melancon") and Marx Sterbcow ("Sterbcow"), for Daniel.[8] It appears that Daniel continued to represent BTC and Ham.

On February 5, 2009, the state court granted LeBourgeois leave to file a first supplemental and amended petition (the "amended petition").[9] The amended petition was filed by Melancon and Sterbcow acting on behalf of LeBourgeois. It named as additional defendants Ham, BTC, Christopher Joseph Bell ("Bell"), City Title, LLC, Commonwealth Land Title Insurance Corporation, Westchester Surplus Lines Insurance Company, Steadfast Insurance Company, and Zurich North America-Specialties Claim.[10]

In the amended petition, LeBourgeois restated and re-averred paragraphs 1-14 of the original petition,[11] i.e., the entire original petition, and made additional allegations, including allegations against her co-plaintiffs Ham and BTC. Le Bourgeois stated thirteen causes of action

---

[6] Id. ¶¶V-VI.

[7] Id. ¶¶VII-X.

[8] R. Doc. No. 1-2, motion for leave to file at 1.

[9] Id. at 2.

[10] R. Doc. No. 1-2, am. petition ¶II.

[11] Id. ¶I.

2

against defendants.[12] Whereas the original petition did not expressly state any claims under federal law, the amended petition asserted claims pursuant to the Real Estate Settlement Procedures Act of 1975 ("RESPA"); the Credit Repair Organizations Act ("CROA"); and the Fair Credit Reporting Act ("FCRA").

Accordingly, Allied filed a notice of removal on March 12, 2009.[13] Allied asserts that this Court has subject matter jurisdiction over LeBourgeois's federal claims pursuant to 28 U.S.C. § 1331 and over her state law claims pursuant to 28 U.S.C. § 1367.[14] LeBourgeois does not deny that this Court would have proper subject matter jurisdiction pursuant to § 1331,[15] but contends that Allied's failure to obtain the consent of all defendants renders the removal of this case procedurally defective.[16]

## LAW AND ANALYSIS

**I. STANDARD OF LAW**

In order to remove an action from a state court, a defendant must file a notice of removal

---

[12] Le Bourgeois's causes of action fall into two categories: those arising out of an alleged August 2, 2006 loan closing on her home and those arising out of an alleged November 9, 2007 loan closing on her home. LeBourgeois's causes of action in the first category are: (1) breach of contract; (2) violation of standard of care owed by an attorney; (3) conversion of chattels; (4) negligence; (5) violation of section 8(a) of the Real Estate Settlement Procedures Act of 1974 ("RESPA"); (6) violation of section 8(b) of RESPA; (7) violations of the Credit Repair Organizations Act ("CROA"); (8) fraud; (9) violation of the Fair Credit Reporting Act ("FCRA"); and (10) failure to pay debts. Her causes of action in the second category are: (1) violation of section 8(a) of RESPA; (2) violation of section 8(b) of RESPA; and (3) fraud. Am. petition ¶¶166-306.

[13] R. Doc. No. 1, notice of removal.

[14] Id. ¶¶4, 10.

[15] Mem. supp. at 5. LeBourgeois's brief is silent with respect to whether this Court has proper subject matter jurisdiction over her state law claims under § 1367, as asserted by Allied.

[16] Id. at 4.

in a United States District Court "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "The provisions of section 1446(b) make it clear that a petition for removal must be filed within thirty days after service of summons upon the defendant." Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 (5th Cir.1988). "In cases involving multiple defendants, the thirty-day period begins to run as soon as the first defendant is served (provided the case is then removable)." Id. at 1263.

All defendants who have been properly joined and served must join in the removal "no later than thirty days from the day on which the first defendant was served."[17] Id. at 1262-63. The failure of all defendants to join in the removal renders the removal defective under § 1446(b) and a motion to remand may properly be filed pursuant to § 1447(c).[18] See id. at 1262; see also Farias v. Bexar County Bd. of Trustees, 925 F.2d 866, 871 (5th Cir. 1991). "[B]y restricting removal to instances in which the statute clearly permits it," this rule "is consistent with the trend to limit removal jurisdiction and with the axiom that the removal statutes are to be strictly construed against removal." Brown v. Demco, Inc., 792 F.2d 478, 482 (5th Cir. 1986)

---

[17] LeBourgeois admits that Killett was not served prior to Allied's removal of this case. Id. at 5 n.2. Accordingly, she does not assert that Killett's lack of consent is a basis for remand. Id. As the Fifth Circuit explained in Getty Oil:
> [Section 1446(a)] has been interpreted to require that all then served properly joined defendants join in the removal petition. There are several rather narrow exceptions to this rule. . . . Defendants (at least those not citizens of the forum state) who are unserved when the removal petition is filed need not join in it.

Getty Oil, 841 F.2d at 1262 n. 9 (citations omitted). "[I]f a removal petition is filed by a served defendant and another defendant is served after the case is thus removed, the latter defendant may still either accept the removal or exercise its right to choose the state forum by making a motion to remand." Id. at 1263.

[18] If the removing parties fail to comply with these procedural requirements, the plaintiff may move to remand within thirty days of removal. 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1117 (5th Cir.1998). Here, LeBourgeois's motion to remand was timely filed on March 26, 2009, fourteen days after Allied filed the notice of removal.

(footnotes omitted). There are, however, exceptions to this general "rule of unanimity."[19]

A.   *Nominal Party*

The Fifth Circuit has held that "nominal" or "formal" parties need not join in the removal to federal court. See Farias, 925 F.2d at 871. "To establish that non-removing parties are nominal parties, 'the removing party must show . . . that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court.'" Id. (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A Dec. 1981)). This same test applies "whether diversity or federal question jurisdiction is the mode of removal." Id. at 871-72.

B.   *Exceptional Circumstances*

In Brown v. Demco, Inc., the court suggested that "[e]xceptional circumstances might permit removal even when a later-joined defendant petitions more than precisely thirty days after the first defendant is served." Brown, 792 F.2d at 482. In the absence of a plaintiff's waiver of the thirty-day time limit imposed by § 1446(b), "or some equitable reason why that limit should not be applied, however, a defendant who does not timely assert the right to remove loses that right." Id. at 481 (emphasis added).

In Brown, a defendant, FMC, was added over four years after the initial lawsuit was filed

---

[19] In addition to the exceptions addressed below, the Fifth Circuit has recognized a "judicially-created revival exception to the thirty-day requirement of section 1446(b), paragraph one." Johnson v. Heublein, Inc., 227 F.3d 236, 241 (5th Cir. 2000). "The revival exception provides that a lapsed right to remove an initially removable case within thirty days is restored when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit." Id. Allied's briefs are silent with respect to this exception and, therefore, the Court does not consider its applicability, if any, to this case.

5

in state court. Id. at 480. FMC, within thirty days of being served, removed the case to federal court with the consent of all co-defendants. A motion seeking remand on the basis of untimely removal was denied. Id. The Court of Appeals reversed, stressing that the case had been litigated in state court for four years. Id. at 482. The "unfairness . . . to the plaintiff" of allowing the initial defendants, who never sought to remove, to remove at this later phase "outweighs the unfairness, if any, to the last-joined defendant [FMC]" of remaining in state court. Id.

The Brown court concluded by stating that it "establish[ed] no inexorable time limit" for removing a case. Id. Alluding to potential "exceptional circumstances," the court suggested that if the plaintiff "was aware that [FMC] was a proper defendant within the thirty day time limit but delayed naming it as a defendant in a bad faith effort to prevent removal," then affirming removal could be justified. Id.

## II. DISCUSSION

LeBourgeois contends that Allied failed to obtain the consent of all co-defendants named in the amended petition and that this renders the removal defective. Specifically, LeBourgeois asserts, and Allied admits, that the consent of neither Smith, Ham, nor BTC were obtained.[20] LeBourgeois then argues that Allied has not carried its burden of showing that either the nominal party exception or other exceptional circumstances justify removal in this case.

Allied presents three arguments to support removal. First, Allied contends that Smith is a nominal party because LeBourgeois seeks recovery from Allied rather than from Smith. Second, Allied contends that it "diligently attempted by all reasonable means to obtain Smith's consent,

---

[20] Mem. supp. at 3; mem. opp'n at 2 ("All defendants named in the Amended Petition concurred in removal but for Killett, Smith, Ham, and Bell Title."). See also notice of removal ¶11.

6

but could not establish contact."[21]  Under either of these two bases, Allied submits that Smith's lack of consent is, therefore, excusable.  Third, Allied contends that the alignment of BTC and Ham as plaintiffs in the original petition and defendants in the amended petition effectively "renders gaining unanimous consent to removal extremely unlikely."[22]

To reiterate, the rule of unanimity requires "that all defendants who are properly joined and served must join in the removal petition" and "failure to do so renders the petition defective."  Getty Oil, 841 F.2d at 1262.  For this Court to retain jurisdiction over this case, Allied must, therefore, meet its burden of showing a valid exception to the rule of unanimity for each of Smith, Ham, and BTC.  See Manguno v. Prudential Property and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) ("The removing party bears the burden of showing . . . that removal was proper.").  Furthermore, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  Manguno, 276 F.3d at 723.

*A.    Smith*

As stated, Allied contends that Smith is a nominal party and that its failure to obtain his consent may be disregarded.  Further, and in the alternative, Allied contends that its diligence in attempting to obtain Smith's consent constitutes an exceptional circumstance which exempts it from the rule of unanimity.

1.    Nominal Party

---

[21] Mem. opp'n at 8.

[22] Id. at 12.

"The bottom line concern in determining a nominal party is whether the plaintiff can establish a cause of action against the nonremoving defendant in state court." Brown, 925 F.2d at 872. Allied argues that LeBourgeois, "by suing Allied vicariously for the alleged acts of both Killet [sic] and Smith, seek[s] to recover any money judgment [she] may obtain against those <u>in personam</u> defendants from Allied."[23] That LeBourgeois may seek a judgment against Smith's employer, Allied, under a <u>respondeat superior</u> theory, however, does not mean that she cannot establish a cause of action against Smith individually in state court. LeBourgeois, meanwhile, argues convincingly that she can establish nine causes of action against Smith and other defendants.[24]

Allied asserts that in conducting nominal party analyses, courts have "considered whether or not a plaintiff could realize recovery from a non-removing defendant."[25] Allied cites <u>Inman Construction Corp. v. Southern Pilot Insurance Co.</u>, 2007 WL 1657422 (N.D. Miss. June 5, 2007), in which the court found a nonremoving defendant, Legion, to be a nominal party and denied a motion to remand. <u>Id.</u> at *2. However, the <u>Inman Construction</u> court found "Legion's insolvency, evidenced by pending liquidation proceedings in Pennsylvania" to be "dispositive." <u>Id.</u> The court stated: "Decisions from numerous jurisdictions, including Mississippi, recognize that parties which are in liquidation and have no assets when litigation against them is commenced are nominal parties which need not join in a notice of removal filed by another defendant." <u>Id.</u> In this case, there has been no showing, let alone argument, that Smith, an

---

[23] <u>Id.</u> at 6.

[24] Mem. supp. at 7-9, ¶¶3-8, 10-12.

[25] Mem. opp'n at 5-6.

individual, has no assets or is currently in liquidation proceedings. Inman Construction is, therefore, distinguishable from the present case.

Allied also cites Johns v. Texas Workforce Commission, 114 F. Supp. 2d 590 (S.D. Tx. 2000), a case under the Texas Payday Act, wherein the court found the Texas Workforce Commission ("TWC") to be a nominal party and denied a motion to remand. At the administrative level and prior to litigation in federal court, the TWC ruled against the plaintiff and in favor of Information Builders, Inc. ("Information Builders"). The plaintiff, seeking review of the TWC's ruling, sued Information Builders in state court. Id. at 591. As required by Texas law, the plaintiff also named the TWC as a defendant. Id.

The court ruled that the plaintiff could not "possibly establish a cause of action against the [TWC]." Id. at 592. It reasoned that any victory by the plaintiff "would be not against the [TWC], but rather against Defendant Information Builders, which would have to pay any such money judgment." Id. The court noted that the TWC could not "be required to take or refrain from taking any action following the disposition of this matter" and concluded that the TWC was "only present before this Court because a Texas statute required Plaintiff to name the [TWC] as a defendant." Id.

Unlike the TWC, Smith is not a party whose joinder was required pursuant to state or federal law. Moreover, if LeBourgeois ultimately prevails on the merits and obtains a judgment against Smith, he may be held liable for her damages, notwithstanding the fact that his employer, Allied, could also bear liability for his actions. Unlike Johns, this case involves a very real possibility of plaintiff gaining a victory against Smith individually. It is, therefore, distinguishable and unhelpful to Allied's position.

9

To the extent that Allied cites these cases for the general proposition that a defendant against whom a plaintiff is unlikely or unable to ultimately recover is a per se nominal party, that argument is rejected. The nominal party inquiry properly looks to whether the plaintiff can establish a cause of action against the defendant in state court, not to whether the plaintiff will recover any money from that defendant. Moreover, this Court would engage in nothing more than rank speculation were it to credit Allied's argument and simply assume that Smith would be unable to pay any money judgment obtained by LeBourgeois.

On the record before it, the Court finds that Allied has not met its burden to show that Smith is merely a nominal party to LeBourgeois's amended complaint. The nominal party exception is, therefore, not a proper basis to excuse Allied's failure to obtain Smith's consent

2.   Exceptional Circumstances

Allied argues that it "made every diligent and reasonable effort to contact Smith for the purpose of obtaining his consent to removal."[26] It attaches a letter dated February 26, 2009 which requests Smith's consent to removal. It also attaches documentation from Federal Express showing that this letter was delivered to an address in Hammond, Louisiana on February 27, 2009.[27] Allied also attaches the affidavit of Warren Horn ("Horn"), Allied's counsel, who states that in an effort to obtain Smith's consent to removal, he personally attempted to contact Smith by the following means: (1) letter delivered via Federal Express; (2) telephone calls to Smith's last known number; (3) telephone calls to another number corresponding to Smith's address of

---

[26] Id. at 9.

[27] R. Doc. No. 12-2, ex. A, Warren Horn letter to Shane Smith.

10

record; and (4) internet searches for other addresses or numbers belonging to Smith.[28] None of these methods of attempted contact were successful in eliciting a response from Smith.[29]

LeBourgeois mounts two arguments in response. First, she argues that a removing defendant's diligent and reasonable, but unsuccessful, attempts to communicate with a co-defendant do not constitute a recognized exceptional circumstance to the rule of unanimity. Second, she argues that, contrary to its assertion, Allied did not make "every diligent and reasonable effort to contact Smith for the purpose of obtaining his consent to removal."[30]

The Court agrees with LeBourgeois's second argument. Allied has not shown that it attempted to communicate with Smith in person at his Hammond address, nor has it set forth good cause for its failure to do so.

Moreover, even if Allied had exhausted all reasonable means available to it to obtain Smith's consent, the Court is not convinced that removal would be justified under those circumstances. Allied cites three cases to support its argument that diligent, but unsuccessful, efforts to communicate with a served defendant in an effort to obtain his consent to removal fall with the exception circumstances recognized in Brown v. Demco, Inc.

First, Allied cites Gillis v. Louisiana, 294 F.3d 755 (5th Cir. 2002), in which the court upheld removal, notwithstanding the fact that the nonremoving defendant, the Board, did not formally authorize its consent to removal until thirty-nine days after the expiration of the removal period. Id. at 758. The Court found the circumstances surrounding the untimely

---

[28] R. Doc. No. 12-3, ex. B, Warren Horn aff. ¶3.

[29] Id. ¶5.

[30] Mem. opp'n at 9.

11

ratification of consent to be exceptional, stating:

> Specifically, we note that the [defendant] Board attempted to schedule a meeting prior to the expiration of the removal period, that the chairman of the Board was also a plaintiff in the case, that [defendant's counsel] Dees was informally authorized and filed an otherwise proper consent, and that the Board ultimately ratified Dees's conduct. Based on the unique circumstances of this case, we agree with the district court's conclusion that the equitable exception stated in Getty Oil applies.

Id. at 759. Unlike the present case, Gillis involved an untimely consent to removal rather than a failure to obtain consent altogether. The circumstances deemed exceptional by the Gillis court are all reasons that support excusing the untimely nature of the consent given, rather than reasons excusing a complete lack of consent or a failure to communicate with a nonconsenting defendant. Gillis is, therefore, distinguishable both on its facts and in its underlying rationale for applying the exceptional circumstances doctrine.

Second, Allied cites Forman v. Equifax Credit Information Services, Inc., No. 97-431, 1997 WL 162008 (E.D. La. Apr. 4, 1997). In Forman, two of four defendants filed a notice of removal to which a third defendant consented. They did not obtain the fourth defendant's consent because there was no return of service filed into the state court record. The plaintiff filed a motion to remand, after which the fourth defendant, National Revenue, joined the notice of removal. Unbeknownst to the other defendants, National Revenue had been served three weeks prior to removal. Id. at *1.

The Forman court ruled that the kind of exceptional circumstances considered by the Fifth Circuit in Brown and Doe v. Kerwood, 969 F.2d 165 (5th Cir. 1992), were not present in that case. Forman, 1997 WL 162008, at *2 ("There is no evidence, nor any allegation, that

12

plaintiff withheld service to defeat removal or otherwise acted in bad faith in an attempt to manipulate the forum."). The court ultimately granted the motion: "Even assuming that 'exceptional circumstances' existed, the removing defendants had sufficient time to determine that National Revenue had been served prior to removal and to obtain its consent." Id. at *2.

Convinced that the removing defendants' efforts to determine service on National Revenue were inadequate, the court described methods those defendants could have employed to confirm service and obtain National Revenue's consent. It concluded that "the removing defendants' conduct was not reasonable in failing to obtain the consent of National Revenue within 30 days of service on the initial defendant." Id. The Forman court appears to have applied a reasonableness standard to assess the efforts of the removing defendants to obtain National Revenue's consent. Notably distinct from this case, however, National Revenue did eventually join in the notice of removal. Moreover, the court found that the removing defendants' conduct was not reasonable and that exceptional circumstances were not present.

Third, Allied cites Dupree v. Torin Jacks, Inc., 2009 WL 366332 (W.D. La. Feb. 12, 2009). The facts of Dupree are similar to those of Forman. Two defendants joined in a notice of removal, asserting that the consent of a third defendant, AWI, was not required because AWI had allegedly not yet been served. Id. at *1. The plaintiff moved to remand, alleging that AWI had been served prior to removal and had not consented. AWI eventually filed a separate notice of consent to removal "well outside the removal period under any reasonable construction of the facts." Id.

As in Forman, the Dupree court found that the removing defendants' counsel's efforts were inadequate. Id. at *4 ("[C]ounsel could have easily contacted AWI directly to learn if it

13

had been served, if it consented to removal, or the name of its counsel."). Finding "no evidence that the removing defendants made any attempt to communicate with AWI prior to removal," the court granted the motion to remand.

Although the efforts of Allied to obtain consent in the present case are somewhat more impressive than those of the removing defendants in Dupree, the Court finds the case distinguishable. First and foremost, and as in Forman, the nonremoving defendant in Dupree eventually did consent to remove the case to federal court, although such consent was untimely. There is no evidence of any such consent, untimely or otherwise, from Smith in this case. The cases cited by Allied appear to establish a reasonableness standard to assess the efforts of a removing defendant to obtain the consent of a co-defendant, when that co-defendant ultimately consents to removal. The courts in those cases considered the record with the understanding that all defendants desired to litigate in federal court – this Court lacks the benefit of such a record.

Even were the Court to apply the reasonableness standard apparently adopted by Forman and Dupree, the Court would find that Allied's efforts fell short of that standard. Allied first received notice of LeBourgeois's amended petition on February 18, 2009.[31] The first attempted contact with Smith did not occur until February 26, 2009, over one week later. Given the eleven defendants named in the amended petition, it was incumbent upon any party seeking removal to expeditiously obtain the consent of its co-defendants. Furthermore, as mentioned above, Allied's efforts, though not insignificant, did not include any attempt to make direct, in-person contact with Smith at his Hammond address.

Accordingly, the Court finds that Allied has not met its burden to show that an

---

[31] Notice of removal ¶2.

exceptional circumstance excuses its failure to obtain Smith's consent to removal. With no viable exception to the rule of unanimity demonstrated by Allied with respect to Smith's lack of consent, this Court must remand this case to state court.

B.    *Ham and BTC*

Because this Court resolves the issues of Smith's lack of consent in LeBourgeois's favor, it need not decide whether Allied's failure to obtain Ham's and BTC's consent necessitates remand. See e.g., Getty Oil, 841 F.2d at 1262 ("[A]ll defendants who are properly joined and served must join in the removal petition . . . ." (emphasis added)).

C.    *Attorneys' Fees*

Finally, LeBourgeois argues that she is entitled to attorneys' fees incurred in connection with the filing of her motion to remand.[32] Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Fees should only be awarded if the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper.'" Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 541 (5th Cir. 2004) (quoting Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (5th Cir. 2000)).[33]

Although LeBourgeois ultimately prevails in having the case remanded to state court, the

---

[32] Mem. supp. at 10.

[33] The Hornbuckle court noted that in considering an award of costs, "the remanding court's discretion is much broader . . . than with respect to an attorney's fees award." Hornbuckle, 385 F.3d at 541 n.5. LeBourgeois, however, does not seek an award of costs, insisting only that Allied reimburse her for attorneys' fees incurred. Mem. supp. at 10.

Court does not find that Allied lacked objectively reasonable grounds to believe that removal was proper. Its arguments in support of removal were not premised on unreasonable legal positions, but were instead grounded in the relevant caselaw on the issues present in this case. LeBourgeois's request for attorneys' fees is, therefore, denied.

### III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion to remand is **GRANTED** and that this case be remanded to the Civil District Court for the Parish of Orleans for all further proceedings.

New Orleans, Louisiana, May 12, 2009.

                                        **LANCE M. AFRICK**
                              **UNITED STATES DISTRICT JUDGE**